Craig T. McFARLAND, Trustee for Capital Growth Trust, and George G. Stuart and Janet A. Stuart, Trustees U/A November 2, 1976, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

MEMOREX CORPORATION, et al., Defendants.

Craig T. McFARLAND, Trustee for Capital Growth Trust, and George G. Stuart and Janet A. Stuart, Trustees U/A November 2, 1976, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

LEHMAN BROTHERS KUHN LOEB, INC. et al., Defendants.

Nos. C–79–2007–WAI(SJ), C–79–2926–WAI(SJ).

United States District Court, N.D. California.

Sept. 17, 1982.

David B. Gold, Paul F. Bennett, John W. Allured, San Francisco, Cal., for plaintiffs.

Graham B. Moody, Barry B. Goode, Charlene S. Shimada, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for Deloitte, Haskins & Sells.

Simpson Thacher & Bartlett, James J. Hogan, Kenneth R. Logan, New York City, Heller, Ehrman, White & McAuliffe, Douglas M. Schwab, Philip J. Martin, San Francisco, Cal., for Lehman Brothers Kuhn Loeb.

Lawrence Calof, J. Michael Brennan, Joseph P. Busch, III, Gibson, Dunn & Crutcher, Newport Beach, Cal., for Memorex Corp.; Robert C. Wilson; Robert L. Chambers; Alger Chaney; Philip J. Gomez; Vester T. Hughes, Jr.; Alvin C. Rice; T. Robert Sandberg; Benno C. Schmidt; Theodore D. Vermuelen; William M. George; and Henry C. Montgomery.

## MEMORANDUM OF DECISION

INGRAM, District Judge.

This matter came before this Court on plaintiffs' motions for certification of two classes, a plaintiff class and a defendant class, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs bring this first motion to certify a class of all persons[1] who purchased the common stock of Memorex Corporation from August 9, 1978 to October 31, 1978, pursuant to an alleged misleading registration statement and prospectus. They bring the second motion to certify a defendant class of underwriters, to be represented by defendants Lehman Brothers Kuhn Loeb, Inc. ("Lehman"), and Blyth Eastman Dillon & Co., ("Blyth"), for the purpose of litigating the claims under Sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C., Sections 77k and 77*l*(2).[2]

The Court has reviewed and considered all the arguments presented by the parties in their motion papers and at the two hearings that were held on this matter. On May 14, 1982, this Court filed a memorandum which listed certain tentative inclinations on some aspects of these motions. However, it is the ruling contained in the present memorandum which shall prevail in this matter.

While considerable briefing time and space has been devoted to the merits of this case, this Court has not, and will not consider here, those matters which pertain to the underlying controversy of the case. Such a consideration is inappropriate under the ruling of *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

*Background*

This case arose out of alleged misstatements and material omissions made by Memorex in its registration statement pursuant to the August 9, 1978 offering of common stock. The parties involved in this case are as follows: plaintiffs are Craig McFarland (as trustee of the Capital Growth Trust), and George and Janet Stuart (as trustees U/A November 2, 1976). McFarland purchased newly issued shares of Memorex common stock from Lehman Brothers.[3] The Stuarts purchased newly issued shares from E.F. Hutton & Company, a potential member of the defendant underwriter class. The defendants in this case are Memorex Corporation, its executive officers and board of directors; underwriters Lehman and Blyth, in their individual capacities and as representatives of a defendant class of all underwriters who participated in the August 9, 1978 public offering of Memorex common stock; accountants Deloitte, Haskins & Sells ("Deloitte"), who performed accounting, auditing, and other services for Memorex and the selling warrant holders as described in the second amended complaint.

The second amended complaint is the operative pleading in this action. It sets forth causes of action based on alleged violations of Sections 10, 11, 12(2), 15 and 20 of the Securities Acts of 1933 and 1934; Sections 25401 and 25501 of the California Corporations Code; and on state law theories of fraud, negligent misrepresentation, and professional malpractice. Also, according to the second amended complaint, plaintiffs were purchasers of newly issued Memorex common stock which was sold at the August 9 offering.[4]

1. The term "persons" is proposed to include any individual, corporation, partnership, association, joint stock company, trust, unincorporated organization, government and any political subdivision thereof, and any other type of legal entity except that named defendants and any nominee, agent or member of the immediate family of any defendant shall be specifically excluded.

2. For the purposes of the Section 12(2) claim, plaintiffs request class certification for litigating only one issue: whether the August 1978 registration statement and prospectus contained materially false and misleading statements or omissions.

3. "Old" stock is that which was issued prior to the August 9, 1978 offering. "New" stock was issued on or after that date.

4. At the July 12, 1982 hearing on this matter, plaintiffs' counsel informed the Court that there was a possibility that McFarland had purchased "old" stock as well as "new." How-

*Motion for plaintiff class certification*

■ Rule 23(a) demands that the plaintiffs satisfy all of the following requirements before a class can be certified: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and, (4) the representative parties must fairly and adequately protect the interests of the class. In addition, one of the elements of Rule 23(b) must be satisfied. Here, plaintiffs seek to certify a class under Rule 23(b)(3), which requires that the Court find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Each of these requirements will be discussed below. However, before these rules can be examined, there must be before the Court material sufficient to form a reasonable judgment on each of the above-listed requirements. *Blackie v. Barrack,* 524 F.2d 891, 900–01 (9th Cir.1975). Defendants have alleged that the second amended complaint is insufficient for such a determination. Defendants insist that the insufficiency arises because of discrepancies between the plaintiffs' second amended complaint and the claims made in the memorandum of points and authorities in support of the motion for class certification. This Court does not rule here on whether such a discrepancy exists. It may very well be that any additional facts in the plaintiffs' moving papers are merely an attempt to provide evidence of the allegations in the second amended complaint. However, to delve into the issue at this juncture would amount to a consideration of the merits of the case, which is impermissible under *Eisen v. Carlisle, supra.* Such a determina-

tion would involve, *inter alia,* a decision as to whether the lease-finance transactions were part of the misstatements, and whether the prospectus did indeed contain a misstatement or an omission of a material fact. These issues should be left to the trier of fact.

However, this Court does not presume that the complaint conforms to the requirements of Rule 23. Specifically, this Court finds that there is a sufficient complaint before it because of the charging allegations found in the second amended complaint, and because those allegations must be taken as true for the purpose of a class certification motion. *Blackie v. Barrack,* 524 F.2d at n. 17.

*Numerosity requirement*

The requirement for numerosity is met because of the large number of purchasers of the newly issued Memorex stock.[5] In addition, this Court notes that there was no opposition by defendants on this point.

*Common question of law or fact*

This Court finds that the common question of fact presented by the operative complaint is whether or not the defendants' course of conduct is actionable. In their Section 10 and Rule 10b–5 claims, plaintiffs allege that defendants conspired to and recklessly did include financial and operational data in the registration statement which painted a false and misleading picture of Memorex's financial condition. Plaintiffs' further allege that the impairment of gross profit margins was, contrary to the registration statement, neither temporary nor insubstantial, and that their decision to buy Memorex stock would have been otherwise had the true facts been fully disclosed.

■ Defendants argue that plaintiffs must prove their individual reliance on the misinformation, and also must prove individual causation. However, this is not the

---

ever, the Court finds that plaintiffs are judicially estopped from asserting that he purchased "old" stock. Such an assertion, at this late date, would work an injustice upon defendants, who have been led to believe for three years

that McFarland had purchased only new stock. *See* 1b Moore, Section 0.405(8), pp. 765–773.

**5.** Second amended complaint, par. 16, p. 9.

rule in this circuit. The Ninth Circuit has held, in *Blackie v. Barrack, supra,* and in *Cameron v. E.M. Adams,* 547 F.2d 473 (9th Cir.1976), that the issue of individual reliance on the alleged omissions and misinformation does not affect the actionability of a class suit based on a Section 10 or a Rule 10b–5 claim because individual reliance is not a required element of proof in plaintiffs' case. Additionally, the United States Supreme Court has held, in *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1971), that it is necessary only that the facts withheld be material in the sense that a reasonable investor might have considered them important in making the decision to purchase. Applying these holdings to the present case, it is permissible for the Section 10 and Rule 10b–5 claims to be litigated as a class action, even though there may be differences in the class members' acquisition of, and reliance on, existing information. The issue of the actionability of defendants' conduct is thus common to all class members under *Blackie* and *Cameron.*

■ Furthermore, a prima facie case of causation under Section 10 is established by proof of materiality of the misrepresentation or omission, plus proof of purchase. *Blackie v. Barrack, supra,* at 906. Defendants insist that their right to rebut the prima facie showing of causation precludes the ability to litigate this issue as a class action. However, as stated in *Blackie,* "[t]he fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all." *Id.* at 907, n. 22.

■ This Court also finds that with respect to the Section 11 claims there is a common question of fact as to whether defendants' course of conduct is actionable. Under Section 11, defendants are liable, automatically, for any actual misstatements or omissions in the registration statement. Plaintiffs may recover the difference between the amount paid for the stock and the amount received upon resale. However, there is a defense to this automatic liability: if the buyer knew of the misstatements or omissions at the time of purchase, the buyer is precluded from recovering damages. Defendants argue that the issue of knowledge of the misstatements or omissions is an inherently individual question and prevents class treatment of Section 11 claims. On the contrary, the presence of any misstatements or omissions in the registration statement is capable of litigation as a class question and does indeed present a common question of fact. *See In Re Gap Stores Securities Litigation,* 79 F.R.D. 283 (N.D.Cal.1978). The defense of plaintiffs' knowledge is also a common question of fact, as is the issue of defendants' due diligence. *Id.,* p. 302.

*Typicality*

Defendants assert that the named plaintiffs are not typical of the entire class for two reasons.

First, defendants argue that plaintiffs McFarland and Stuart are not typical because they must prove more than their own claims in order to appropriately represent the entire class. Defendants argue that this is true because the named plaintiffs, as "new" stock purchasers, have Sections 10, 11 and 12(2) claims, plus pendent state law claims against defendants. Plaintiffs also wish to be named as representatives of "old" stock purchasers. The purchasers of previously issued stock have Section 10 claims, and pendent state law claims, against defendants but do not have claims under Sections 11 or 12(2). Defendants object to plaintiffs' additional representation of "old" stock purchasers because in order to prove their Section 11 claims, plaintiffs must only establish that there has been a material misrepresentation or omission in the prospectus. On the other hand, defendants argue, to prove a claim on behalf of the "old" stock purchasers for recovery under Section 10 and Rule 10b–5, plaintiffs must establish not only "reliance" by the market on Memorex's disclosures, but also

"scienter" on the part of defendants. Citing to the recent Supreme Court case of *General Telephone Co. of the Southwest v. Falcon,* —— U.S. ——, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), defendants argue that plaintiffs must prove much more to recover for the "old" stock purchasers than they would have to prove to recover on their own individual claims.

This Court does not agree that plaintiffs must prove more than their claim in order to recover for the entire class. This case is distinguishable from *Falcon, supra.* In that case, the plaintiff had a claim against General Telephone for discrimination in its promotional practices, but had been certified to represent a class of plaintiffs which also had a claim for discrimination in General Telephone's hiring practices. The Supreme Court disapproved of Falcon's additional representation of those persons with a hiring claim because Falcon would have to prove more than the validity of his own claim in order to win. In the case at hand, plaintiffs have claims under Sections 10, 11 and 12(2), and claims under state law. This is certainly more than the claims of old stock holders who only have Section 10 and state law claims. Thus, the situation here is opposite that of *Falcon,* where the class representative had claims that did not embrace those of the entire class. Defendants argue that plaintiffs' counsel will rest after the easier case is proven under Section 11 and not pursue the more difficult case under Section 10. This Court does not find that argument persuasive because it requires the Court to unjustifiably anticipate the probability of such a trial tactic.

Second, defendants assert that plaintiffs are not typical of the class they would like to represent because they are individual, "unsophisticated" purchasers, whereas some of the purchasers of the Memorex common stock during the period in question were institutional or "sophisticated" investors. Defendants object to this representation because the institutional investors are bound by a fiduciary duty to be highly knowledgeable about the stock market in general and presumably about Memorex in particular. They are obviously more knowledgeable

than the "mom and pop" investors represented by plaintiffs. Because of this disparity in sophistication, defendants insist that there are inherently individual issues of due care and reliance on alleged omissions or misrepresentations incapable of class treatment.

■ On the contrary, this disparity does not make plaintiffs atypical of the class. The various degrees of knowledge of the different purchasers do not affect plaintiffs' ability to represent the class. Certain questions exist, regardless of a purchasers' sophistication. For example, there is the question of whether or not there were misrepresentations or omissions which violated the securities laws. This question applies to the class as a whole, irrespective of plaintiffs' knowledge. In addition, if there was, as defendants contend, published information which adequately informed the purchasers of the financial condition of Memorex, that is a common question that applies to the class as a whole. If it should become necessary to determine the individual purchaser's awareness of such published information, that can be done at a later time. It alone will not preclude typicality. Thus, this Court finds that plaintiffs have satisfied the requirement of Rule 23(a)(3).

*Adequacy and fairness of representation*

This Court finds that the named plaintiffs are represented by competent and experienced counsel; that this is not likely to be a collusive suit; and, as discussed above, that the named plaintiffs do not have interests which are antagonistic to the interests of the other purchasers they purport to represent.

*Predominance of common questions*

■ This Court finds that there is a predominance of questions which are common to the class over the questions which are pertinent only to individual purchasers. As identified in the previous discussions on commonality and typicality, there exist questions applicable to the class as a whole. The mere presence of potential individual issues does not defeat the predominance of

common questions. *Williams v. Sinclair,* 529 F.2d 1383, 1388 (9th Cir.1975), and *Cameron v. E.M. Adams and Co., supra,* 547 F.2d at 478.

### State law claims

■ There can be no nationwide nor statewide class certified for the common law claims of fraud, negligent misrepresentation, and professional malpractice because this Court finds that the common issues do not predominate over the individual issues. Plaintiffs' allegations raise questions of law and fact under the law of every state where a purchase of Memorex stock was made. Thus, in order to determine the validity of a fraud claim, the law of each state where a purchase was made must be examined. Where there is no single law governing the entire class, the common law fraud allegations do not warrant class treatment. *Elster v. Alexander,* 76 F.R.D. 440 (N.D.Ga. 1977), *appeal dismissed,* 608 F.2d 196 (5th Cir.1979); *In re Hotel Telephone Charges,* 500 F.2d 86 (9th Cir.1974). Similarly, on the negligent misrepresentation and professional malpractice claims, the law of each state must be examined for the requirements on the standard of duty.

■ While these strictures alone would create a dominance of individual issues over common issues, there are also proof problems which must be dealt with on an individual basis. For instance, individual reliance on the fraud and the misrepresentation must be proven by plaintiffs. This may not be an essential element of a class action brought under Section 10, but it is still a required element of common law fraud and deceit. *Tober v. Charnita, Inc.,* 58 F.R.D. 74 (M.D.Pa.1973). Thus, there can be no class action certified here where the common issues predominate.

Because a class is not certified for the purposes of these common law claims, another issue is raised. The question is whether these claims are now properly before the Court pursuant to pendent jurisdiction under the ruling of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Further argument is needed as to whether the Court should retain these claims under its discretion. Thus, without a properly noticed motion and points and authorities on this subject, no ruling will be made on the status of the pendent state claims.

■ As to the claims brought under California Corporations Code, Sections 25401 and 25501, this Court rules that there can be no certification of a nationwide class. These sections apply only to purchasers who buy a security in California by means of a misleading written or oral communication. Only purchasers who can show the requisite contacts with California can satisfy the jurisdictional limitations of Cal.Corp.Code, Section 25008. Therefore, a class shall be certified which shall consist only of those purchasers who bought Memorex stock in California. For the reasons discussed in the previous sections, this Court finds that plaintiffs have satisfied the requirements of Rule 23 for a statewide class on these claims, since the California law approximately parallels the federal law.

### Dates of class period

■ The issue here is whether the class shall consist of purchasers of Memorex stock from August 9, 1978 through October 17, 1978, or through October 31, 1978. The rule appears to be that liability under the securities acts is terminated when curative information is publicly announced or otherwise effectively disseminated. *Shapiro v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228 (2nd Cir.1974); *Elkind v. Liggett & Myers, Inc.,* 472 F.Supp. 123 (S.D. N.Y.1978).

On October 17, Memorex issued a press release which announced materially disappointing earnings for the third quarter. As both parties seem to agree, the price of Memorex stock fell approximately $11.00 on October 17—from $49.125 per share at the close on October 16, to $38.75 per share at the close on October 17. Plaintiffs argue that the cutoff date should be October 31, presumably because it took that long for the market to absorb the information, and

because the press release did not contain all the necessary curative information. Defendants argue that the date should be October 17 because the market was able to absorb the information immediately on that date, as demonstrated by the sharp price decline.

Because of the disagreement as to whether the press release was effectively disseminated, and whether it contained all the curative information, this Court does not conclusively decide that the cutoff date for the class of purchasers shall be October 17. However, plaintiffs have failed to provide convincing support for their contention that October 31 is a more reasonable date. Therefore, this Court rules that the class of purchasers shall tentatively consist of purchasers of Memorex stock from August 9, 1978 through October 17, 1978.

*Motion for certification of a defendant class*

■ Plaintiffs have requested that a defendant class be certified pursuant to Rule 23(b)(3), for the purported violations of Section 11 in connection with the August 9 offering of Memorex stock. They seek to name underwriters Lehman and Blyth as representatives on the issue of the underwriters' liability for this issue, and also on the issue of whether the registration statement was materially false and misleading under Section 12(2). Plaintiffs seek to certify the class under Section 12(2) by satisfying the requirements of Rule 23(b)(1).

Plaintiffs have chosen underwriters Lehman and Blyth as representatives because of a document entitled "Agreement Among Underwriters." This document was executed by each of the 102 participating underwriters for the August 9 offering. In it, Lehman and Blyth are designated as the representatives for the group for all matters relating to the offering.

While this Court does not rule that the agreement is a legal justification for certification of a defendant class, it does provide a basis for determining that Lehman and Blyth will adequately represent the interests of the other underwriters.

*Rule 23(a)*

The requirements for a defendant class action are the same as those stated above under Rule 23(a). This Court finds that the requirement of numerosity found in Rule 23(a)(1) is met here because there are 104 jurisdictionally diverse defendants which cannot practically be joined as defendants. The requirement of commonality in Rule 23(a)(2) is met because under Sections 11 and 12(2) there is a common question of fact as to the presence of any misstatements or omissions in the registration statement. Also, there are common defense issues as to whether the plaintiffs purchased with knowledge of the misrepresentations in the prospectus and whether the underwriters exercised due diligence in their investigation of the registration statement. *In re Gap Stores, supra,* 79 F.R.D. at 302; see also discussion above under plaintiff class certification.

The requirement of Rule 23(a)(3) is also met here because the underwriters will have defenses typical of the class. Under Section 11, they will aim to prove that the registration statement and prospectus contained no untruths or omissions; that the lead underwriters acted with due diligence; and that plaintiffs purchased the securities with knowledge of the untruths or omissions. *In re Gap Stores, supra,* 79 F.R.D. at 302–03; and *In re Itel Securities Litigation,* 89 F.R.D. 104, 121–22 (N.D.Cal.1981). Under Section 12(2) they will aim to prove that there was no material misrepresentation or omission. *In re Itel Securities Litigation, supra,* at 112.

The requirement of adequate and fair representation under Rule 23(a)(4) is also satisfied here because the interests of Lehman and Blyth are not antagonistic to those of the other underwriters in the class. By successfully defending their own position, the lead underwriters will successfully defend all other underwriters. Indeed, this is what they are required to do under the terms of the Agreement Among Underwriters. If it later develops that there is some antagonism between Lehman and Blyth and the other underwriters, the Court re-

tains the power to amend the class or to change the class representative. Furthermore, this Court finds that the lead underwriters are represented by extremely able counsel who will vigorously pursue their clients' defense in every way.

*Rule 23(b)—Section 11 claims*

For purposes of plaintiffs' Section 11 claims, plaintiffs must also satisfy one portion of Rule 23(b). Here, plaintiffs have chosen Rule 23(b)(3). This Court finds that the requirements of this rule are met. As was concluded in the discussion for the plaintiff class certification, there are questions of law and fact common to the members of the defendant class which predominate over any questions affecting only individual members. Those common issues are whether there was indeed a registration statement which was incomplete in some way; whether plaintiffs purchased with knowledge of the falsities; and whether the lead underwriters exercised due diligence. If any individual issues do arise, the Court can create sub-classes or decertify the class. *In re Itel Securities Litigation, supra,* at 113.

*Rule 23(b)—Section 12(2) claims*

For the purpose of plaintiffs' Section 12(2) claims, plaintiffs seek to satisfy Rule 23(b)(1). This Court determines that the requirements of that rule have been met. Rule 23(b)(1) provides that:

"An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition, the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudication with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . ."

Here, plaintiffs seek to prove under Section 12(2) that the registration statement was materially misleading. If this were attempted to be proven in 104 separate trials against the individual underwriters, it is possible that different results may be reached, depending on the trier of fact. In reality the result should be the same in each case, depending only on the materiality of a single set of documents. Thus, there is a risk of inconsistent or varying adjudications, and Rule 23(b)(1)(A) is satisfied. *In re Itel Securities Litigation, supra,* at 125.

Therefore, for the above stated reasons, IT IS HEREBY ORDERED that:

(1) A plaintiff class shall be conditionally certified, with plaintiffs McFarland and Stuart as the representatives for the purchasers of old and new stock for claims arising under Sections 10, 11, 12(2), 15 and 20. Within this class, plaintiffs shall be certified to represent the institutional investors and purchasers of Memorex stock.

(2) There shall be no class certified for the purposes of the common law claims of negligent misrepresentation, fraud, and professional malpractice.

(3) There shall be a tentative class certified for the Cal.Corp.Code, Sections 25401 and 25501; however, this shall not be a nationwide class, but rather a statewide class of plaintiffs.

(4) There shall be a defendant class of underwriters conditionally certified for the purposes of the claims under Sections 11 and 12(2).

(5) The class period shall tentatively extend from August 9, 1978 to October 17, 1978.

IT IS FURTHER ORDERED that counsel for plaintiffs and defendants shall prepare a form of order for the Court's approval regarding notice to members of the plaintiff class and the defendant class.