**In re UNIOIL SECURITIES LITIGATION.**

Nos. CV 84–2359–PAR, CV 84–2400–PAR and CV 84–2496–PAR.

United States District Court, C.D. California.

April 29, 1985.

Milberg Weiss Bershad, Specthrie & Lerach, William S. Lerach, Stacey L. Mills, San Diego, Cal., Corinblit, Shapero & Seltzer, Jack Corinblit, Marc M. Seltzer, Los Angeles, Cal., Berger & Montague, Stanley Wolfe, Philadelphia, Pa., Pomerantz, Levy, Haudek, Block & Grossman, Stanley M. Grossman, Joseph J. Tabacco, Jr., New York City, and Richard I. Fine, Los Angeles, Cal., for plaintiffs.

James W. Mercer, Greenberg, Hennigan & Mercer, Los Angeles, Cal., Josef D. Cooper, Tracy R. Kirkham, Cooper, Kirkham & McKinney, San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

Pursuant to Fed.R.Civ.P. 23(c)(1), named plaintiffs Jacob Deutsche and Thomas Wilson move for certification of a class of plaintiffs to be defined as follows: All persons who during the period August 18, 1983 through February 3, 1984 purchased the common stock of Unioil on the open market and were damaged thereby, excluding Unioil, J.W. Weller & Co., Howard Bronson & Co., the individual defendants and their heirs, successors, assigns, partners or principals and those who purchased to cover short sales.

Plaintiffs' first amended complaint alleges a violation of section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) arising out of a scheme by defendants artificially to inflate the price of Unioil stock by knowingly and recklessly making false and misleading statements which failed to disclose material adverse facts about Unioil. These statements concerned Unioil's business prospects, management, revenues, earnings and profits as well as oil and gas discoveries and reserves. The misrepresentations were allegedly made in press releases, annual reports and filings with the S.E.C. Moreover, plaintiffs charge that defendants concealed and failed to disclose other material information about Unioil and it business. Allegedly, after the truth of Unioil's economic health and proven oil and gas reserves were made known around February 6, 1984, the price of Unioil's stock dropped from a high of $14.125 per share to $2.50. Plaintiff's complaint also alleges that defendant Richards, along with other co-conspirators, purchased large amounts of Unioil stock in order to manipulate its price during the class period.

In order to maintain a lawsuit as a class action, the plaintiffs must satisfy each of the four conjunctive criteria set forth in Fed.R.Civ.P. 23(a). Additionally, the action must fall within one of the three subdivisions established in Rule 23(b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974). Rule 23(a) provides:

> "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Plaintiffs maintain that the lawsuit is properly brought as a class action under Rule 23(b)(3) because the common questions of law or fact predominate over questions affecting individual members and because of the superiority of the class action device for attaining the fair and efficient adjudication of the controversy.

■ Plaintiffs bear the burden of establishing that the action may be maintained as a class action. *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847, 854 (9th Cir.1982); *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 36 (N.D.Cal.1977). The failure of plaintiffs to

carry their burden as to any one of the requirements of Rule 23 precludes the maintenance of the lawsuit as a class action. *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir.1975). Before ordering that a lawsuit may proceed as a class action, the trial court must rigorously analyze whether the prerequisites of Rule 23 have been met. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). At the same time, it is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing. *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir.1975); *Ridings v. Canadian Imperial Bank*, 94 F.R.D. 147 (N.D.Ill.1982).

▮ The Court's determination of class certification may not be made to turn on whether the representative plaintiffs have a meritorious claim. *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 37 (N.D.Cal.1977), *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). Instead, "[t]he court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations. While the court may not put the plaintiff to preliminary proof of his claim, it does require sufficient information to form a reasonable judgment." *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). Although inquiry into the merits of plaintiffs' case is not permitted under Rule 23(b), "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Thus, notwithstanding its obligation to take the allegations in the complaint as true, the Court is at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case.

## A. Numerosity.

▮ Although whether the class is so numerous as to make joinder impracticable is best analyzed after the Court has determined the scope of the relevant class, *Harriss*, 74 F.R.D. at 39, plaintiffs estimate that several million shares of Unioil common stock were purchased during the class period. Consequently, the class, as proposed, is estimated to number over one thousand. Defendants do not dispute either the estimated number or the fact that joinder would be impracticable. Other factors, such as the size of individual claims and the geographical dispersion of the potential class members, indicate that joinder would not be feasible. *Somerville v. Major Explorations, Inc.*, 102 F.R.D. 500, 503 (S.D.N.Y.1984). Based on these assumptions, Rule 23(a)(1) is satisfied. *See Seigel v. Realty Equities Corp.*, 54 F.R.D. 420, 424 (S.D.N.Y.1972); *Grossman v. Waste Management, Inc.*, 100 F.R.D. 781 (N.D.Ill.1984).

## B. Commonality.

Plaintiffs assert that Unioil's allegedly false and misleading statements coupled with its failure to disclose the truth constitute a common nucleus of facts to be litigated under Rule 10b–5.

Specifically, plaintiffs point to Unioil's Form 10–Q filed August 18, 1983 in which Unioil reported net income of $264,000 for the quarter ending June 30, 1983 compared to a loss of $122,884 for the prior comparable period. Additionally, Unioil reported an increase in shareholder's equity of $2.39 million and proven oil and gas reserves with a present value of $13.7 million. Complaint, ¶ 40. Similarly, Unioil's Form 10–Q filed on November 21, 1983 reported revenues of $1.67 million and net income of $667,000 compared to a significant loss for the prior year. In the latter filing, Unioil stated that the company was deriving significant revenue from nonproduction sources and that it expected similar revenue from oil and gas production in the near future. Complaint, ¶ 44.

Plaintiffs also allege a pattern of misleading press releases and public notices. For example, in a letter dated February 1, 1984 to shareholders and members of the financial community, defendant De Russy allegedly represented that fourth quarter earnings would at least equal the previous quarter's earnings and that year-end reserve figures would demonstrate substantial improvement. Complaint, ¶ 46. In a press release issued on October 20, 1983, Unioil stated that it was forecasting earnings of $1 per share for the year. Complaint, ¶ 42. Plaintiffs also aver that in October, 1983, Unioil reported two major oil strikes in Wyoming and announced unusually high test flow rates. Complaint, ¶ 41.

According to plaintiffs, the defendants were at the same time suppressing potentially damaging information. Such omissions included: (1) Unioil's reported proven oil and gas reserves where much lower than reported; (2) Unioil's depreciation, depletion and amortization allowance had been artificially low thereby inflating Unioil's quarterly results; (3) Unioil's production rates were lower than reported; (4) an S.E.C. investigation into the legality of Unioil's statements and conduct; (5) two previous consent decrees entered into with the S.E.C. by Unioil founder and director Melvin Richards; (6) Unioil's failure to account for taxes in its economic forecasts; and (7) the absence of factual bases for the earnings per share forecasts. Complaint ¶¶ 49, 50. Plaintiffs also accuse Richards and other conspirators of attempting to manipulate the price of Unioil stock by placing large orders of stock which they had no intention of paying for. Complaint, ¶¶ 53, 54.

 Under *Blackie*, these allegations comprise a common course of conduct in which the class of purchasers defrauded over time has a common interest. *See also Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir.1968); *Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 784 (N.D.Ill. 1984). Further, a series of misrepresentations involving business prospects, earnings, proven gas and oil reserves which, although not all identical, amount to a "practice, or course of business which operates as a fraud" and thus sufficiently unites the class. *Blackie*, 524 F.2d at 903, n. 19. Without intending to find that a "fraud on the market" theory will be apposite to any or all of the conduct alleged, authority in this circuit indicates that a continuing scheme to inflate the price of the stock by misrepresentations and manipulative purchases is a common question of law and fact to all those who purchased during the period when the relevant information was being distributed. Moreover, for purposes of this motion, plaintiffs have demonstrated common issues of law and fact concerning the existence, character and materiality of the mistatements allegedly made by defendants. *Somerville*, 102 F.R.D. at 503; *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 476 (9th Cir.1976). This is so despite the fact that plaintiffs have not alleged individual reliance on defendants' misrepresentations or omissions. *See Blackie v. Barrack*, 524 F.2d at 906. In cases where a common course of conduct by defendants can be shown, courts have been consistently unwilling to consider issues of materiality and reliance as matters requiring individual demonstrations of subjective proof. *Somerville*, 102 F.R.D. at 504. Such issues may be addressed in other stages of the litigation.

Despite the allegations of a common scheme of misrepresentations and omissions, defendants contend that plaintiffs have not articulated a theory that ties the actual damages suffered by each class member to the allegedly illegal acts of defendants. Instead, defendants present a number of alternative causes for the rise and precipitous drop in the price of Unioil's stock. These include: the Persian Gulf war, an IRS crackdown on tax shelters in late 1983, the postponement of natural gas price deregulation, similar effects as a result of nationally recognized brokerage firms becoming market makers of Unioil stock, a short seller "bear raid" in late January, 1984, and market rumors and Winans' *Wall Street Journal* article.

■ Although proof that the decline in market value was unrelated to the material misrepresentations or omissions may provide a defense to liability, *Greenapple v. Detroit Edison Co.*, 618 F.2d 198 (2d Cir. 1980), defendants' alternative theories, however persuasively they may explain the rise and fall of Unioil stock prices, do not negate the existence of common questions of law and fact emanating from the allegedly fraudulent conduct. Plaintiffs' burden on a motion for class certification is only to establish the existence of common questions which predominate over individual questions. Defendants have not cited any authority for the proposition that alternative theories of causation suffice to defeat commonality; and there is authority to the contrary. *Markewich v. Adikes*, 76 F.R.D. 68, 72–73 (E.D.N.Y.1977); *Aboudi v. Daroff*, 65 F.R.D. 388 (S.D.N.Y.1974); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 304–05 (D.Md.1977); *Byrnes v. IDS Realty Trust*, 70 F.R.D. 608, 612 (D.Minn.1976).

### C. *Typicality.*

Rule 23(a)(3) requires "[t]he claims or defenses of the representative parties [to be] typical of the claims or defenses of the class."

"A plaintiff's claim meets the typicality requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.... Typicality refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought. The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y.1981).

■ The named plaintiffs satisfy the typicality requirement by alleging that they, as well as the class, suffered financial losses on their purchase of Unioil stock as a result of defendants' course of conduct. *Somerville*, 102 F.R.D. at 505.

Defendants contend that the claims of the named plaintiffs are not typical of those of the class because the named plaintiffs purchased their stock after Unioil made disclosures which "cured" the misrepresentations. According to defendants, plaintiffs could not be in the class which they seek to represent because their purchases were not the result of any misconduct which had not been corrected. Defendants assert that any misconduct which may have occurred was ameliorated by November 21, 1983, the time of Unioil's Form 10–Q filing. Wilson bought Unioil stock on December 28, 1983 and January 3, 1984; Deutsch bought his shares on January 10, 1984. It is not clear if, or when, the named plaintiffs sold their shares.

Specifically, defendants contend that the alleged misrepresentations were cured in the following manner:

1. Misstatements of Unioil's proven oil and gas reserve data appearing in Unioil's 1982 Annual Report as well as misstatements of depreciation, depletion and amortization were cured in Unioil's Form 10–Qs filed August 18, 1983 and November 21, 1983;

2. The alleged failure to reveal Melvin Richards' association with the company was corrected by the disclosure of his name in the November 21, 1983 Form 10–Q and press releases of October 3, October 12, October 20 and November 16, 1983;

3. Omissions of tax liability in financial reports were cured by a November 16 press release and a November 17 letter to shareholders;

4. After forecasting net earnings of $1.00 per share for the year 1983 Unioil corrected this statement by stating publicly on November 16 and 17, 1983 that its "net earnings figure [was] below [its] forecasts, which were predicated on not paying taxes ...;"

5. Any misapprehension about the significance of the July, 1983, 1 for 10 stock

split was rectified by a detailed press release issued on July 22, 1983 and the issuance of the August 18 and November 21 Form 10–Qs;

■ Truthful disclosures "cure" the misrepresentations or omissions by severing the causal connection between the fraudulent activity and the plaintiff's injury. 5A Jacobs, Litigation Under Rule 10b–5, § 64.04 at 3–349. *McFarland v. Memorex*, 96 F.R.D. 357, 364 (N.D.Cal.1982). Whether subsequent statements cure any prior omissions or misrepresentations is a question of fact, *Valente v. Pepsico, Inc.*, 454 F.Supp. 1228, 1242 (D.Del.1978); *Tomkin v. Kaysen*, [1974–75 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 95,033 at 97,612 (S.D.N.Y.1975), which cannot be appropriately resolved on this motion. The content of the corrections, the method of disclosure and the breadth of the dissemination are all of interest in determining whether fraudulent conduct has been cured. 5A Jacobs, Litigation Under Rule 10b–5, § 64.04 at 3–348–50; *see e.g. Prudent Real Estate Trust v. Johncamp Realty, Inc.*, 599 F.2d 1140, 1148 (2d Cir.1979) (tender offer published in a newspaper; correction which was not published or sent to stockholders held to be ineffective). In addition, disclosure of information cannot cure substantive violations such as certain types of mismanagement of a corporation or manipulation of a market, as plaintiffs have alleged here. 5A Jacobs, Litigation Under Rule 10b–5, § 64.04 at 3–350.

Defendants cite *In Re Memorex Securities Cases*, 61 F.R.D. 88 (N.D.Cal.1973) and *McFarland v. Memorex Corp.*, 96 F.R.D. 357 (N.D.Cal.1982) for the proposition that the end of the class period may depend on when misrepresentations were cured. In *McFarland*, the court was faced with whether the class period was to end on October 17, 1978 or October 31. The parties agreed that a press release issued by Memorex on October 17 which announced disappointing earnings ended the class period because the announcement dispelled any misperceptions about the company's financial health. The only question was whether the class period should extend, as plaintiffs contended, to October 31 because the market took that long to absorb the new information. The court determined that plaintiffs had not submitted convincing evidence to support their "market absorption" theory and tentatively set the class period cutoff as October 17. In *Memorex Securities*, the court determined, while disclaiming any effort to "indulg[e] in a precipitous analysis of the merits," that an April 14 Final Annual Report contained such strikingly different information that it could not be considered part of the fraudulent scheme. Accordingly, the court decided that those who purchased after April 14 were not members of the class. *Id.* at 97.

Unlike *McFarland*, the parties here do not agree that defendants cured market misperceptions at any given time with the issuance of a single press release. Instead, this case involves a relatively wide range of allegedly fraudulent information which is not said to be cured in one pronouncement. Second, it remains an issue of fact whether the cumulative effect of defendants purportedly curative statements is sufficient to cleanse the prior statements of any taint. Indeed, it is not even clear that the curing statements should be taken as true. This Court is not in the same position as were the courts in *McFarland* or *Memorex Securities* and cannot decide for purposes of this motion that prior misrepresentations have been cured in one disclosure or that whatever misconduct occurred was cured as of November 21, 1983. Thus, at this point in the litigation, the claims of the named plaintiffs are typical of the class despite the potentially curative effect of subsequent disclosures by Unioil.

### D. *Adequacy of Representation.*

■ Two factors comprise the requirement set forth in Rule 23(a)(4) that "the representative parties will fairly and adequately protect the interests of the class." The ingredients of fair and adequate representation are: (a) that the representative party's attorney be qualified, experienced and generally able to conduct the litigation,

and (b) that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class. *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 42 (N.D.Cal.1977). As defendants recognize, plaintiffs' attorneys clearly have the competence and experience to conduct this kind of complex litigation and therefore the first prong of Rule 23(a)(4) is easily satisfied.

There is considerable overlap between the typicality prerequisite of Rule 23(a)(3) and the adequate representation requirement of Rule 23(a)(4). *Dura-Bilt,* 89 F.R.D. at 99. Although a court may consider potential conflicts of interest, the Ninth Circuit has observed that courts generally decline to consider conflicts at the outset, unless the conflict is apparent and at the very heart of the suit. *Blackie,* 524 F.2d at 909.

■ Defendants argue that the named plaintiffs have interests adverse to short sellers (those who sold high in order to buy low), market makers (brokers willing to trade on their own account) and ins-and-outs (purchasers who sold during the class period). With respect to damages, any differences between named plaintiffs and class members at this point in the litigation do not preclude class certification. Conflicts which arise later can be solved by grouping the class members into subclasses or bifurcating trial of the damages issue. *Blackie,* 524 F.2d at 908–09; *Tucker v. Arthur Andersen & Co.,* 67 F.R.D. 468 (S.D.N.Y.1975); *Green v. Occidental Petroleum Corp.,* 541 F.2d 1335 (9th Cir. 1976); *Greene v. Emersons, Ltd.,* 86 F.R.D. 47, 61 (S.D.N.Y.1980); *Koenig v. Smith,* 88 F.R.D. 604, 609 (E.D.N.Y.1980); *Somerville,* 102 F.R.D. at 505; *Werfel v. Kamarsky,* 61 F.R.D. 674, 680 (S.D.N.Y. 1974). *Dorfman v. First Boston Corp.,* 62 F.R.D. 466, 476 (E.D.Pa.1973);

Nor do individual issues of reliance preclude class determination. *Blackie v. Barrack,* 524 F.2d at 905 ("Individual questions of reliance are likewise not an impediment—subjective reliance is not a distinct element of proof of 10b–5 claims of the type involved in this case"); *Kane Assoc. v. Clifford,* 80 F.R.D. 402, 406–07 (E.D.N.Y. 1978); *Somerville,* 102 F.R.D. at 504; *Herbst v. ITT,* 495 F.2d 1308, 1316 (2d Cir.1974).

Finally, defendants posit a conflict of interest between brokers who had an interest in selling the Unioil stock and those plaintiffs who were their customers. Defendants argue that the broker/market makers will be aligned with the defendants in showing the absence of market fraud in order to prevent any liability to the plaintiffs. It would appear, however, at this point in the litigation that the interests of the brokers in recovering for any losses suffered by reason of defendants' fraud outweigh the conflict with the customer/plaintiffs—which at this time is merely speculative. *Blackie,* 524 F.2d at 909.

### E. *Predominance of Common Questions and Superiority.*

■ As plaintiffs' claim is based on a common nucleus of misrepresentations, material omissions and market manipulations, the common questions predominate over any differences between individual class members with respect to damages, causation or reliance. *Blackie v. Barrack,* 524 F.2d at 905–06; *Green v. Wolf Corp.,* 406 F.2d 291, 300–01 (2d Cir.1968); *Hochschuler v. G. D. Searle & Co.,* 82 F.R.D. 339, 348–49 (N.D.Ill.1978) (where a common nucleus of fraud within several representations or omissions is alleged, the predominance question has been met); *McFarland v. Memorex,* 96 F.R.D. 357, 363 (N.D.Cal. 1982).

■ Similarly, given the substantial number of possible class members, a class action is the superior method with which to conduct this litigation. *Hochschuler,* 82 F.R.D. at 350. None of the Rule 23(b)(3) factors militate against certifying the class. In view of the competence and experience of counsel on both sides, there do not appear to be any foreseeable problems in their managing the litigation or controlling the prosecution or defense of the action.

Accordingly, IT IS THEREFORE ORDERED that:

1. A plaintiff class is conditionally certified to include all persons who purchased Unioil stock on the open market during the period August 18, 1983 through February 3, 1984, except for Unioil, J.W. Weller & Co., Howard Bronson & Co., the individual defendants and their heirs, successors, assigns, partners or principals and those purchasers who bought to cover a short sale. Such certification is subject to review upon further development of the record, including the possibility of subclasses, modification, realignment or decertification.

2. Within twenty (20) days of the entry of this Order, plaintiffs shall serve on defendants and file with the Court a proposed form of Notice to the class in accordance with the requirements of Rule 23(c)(2), together with supporting affidavits on the basis of which the Court may determine the best notice practicable under the circumstances.