**Conrad D. SCHAEFER and Diane L. Schaefer, et al., Plaintiffs,**

v.

**OVERLAND EXPRESS FAMILY OF FUNDS, Wells Fargo Bank & Wells Fargo & Company, Stephens, Inc., Defendants.**

**Civil No. 95–0314–B (POR).**

United States District Court, S.D. California.

July 3, 1996.

---

James Krause, San Diego, CA, Barton Finkelstein, Washington, D.C., Patrick Keegan, San Diego, CA, for plaintiffs.

Jack Auspitz, New York City, David Knight, Little Rock, AK, William Sullivan, San Diego, CA, for defendants.

## ORDER GRANTING PLAINTIFFS' MOTION CERTIFYING CLASS; DENYING APPROVAL OF CLASS NOTICE; DENYING DEFENDANT STEPHENS' REQUEST FOR CERTIFICATION FOR INTERLOCUTORY APPEAL AND VACATING ORDER OF JUNE 11, 1996

BREWSTER, District Judge.

On June 3, 1996, the above-captioned case came on regularly for hearing before the Honorable Rudi M. Brewster on plaintiff's motion for class certification, motion for approval of the form of the class notice, and defendant's request for certification for interlocutory appeal. James Krause, Esq., Barton Finkelstein, Esq. and Patrick Keegan, Esq. appeared on behalf of plaintiffs Conrad and Diane Schaefer, Trustees for the Schaefer Family Trust of 1992. Jack C. Auspitz, Esq., David Knight, Esq. and William F. Sullivan Esq. appeared on behalf of defendants Overland Express Family of Funds ["Overland"], Wells Fargo Bank ["Bank"], Wells Fargo & Company ["Company"], and Stephens, Inc. ["Stephens"]. After due consideration of the moving and responding papers as well as all relevant evidence, the Court hereby GRANTS plaintiffs' motion for certification of the class, DENIES plaintiffs' motion for approval of the form of the class notice, and DENIES defendant Stephens' request for interlocutory appeal. The Court also herein vacates its Order of June 11, 1996. This order shall be effective NUNC PRO TUNC June 11, 1996.

## I. BACKGROUND

### A. Procedural Background

Plaintiffs filed their original complaint in this case on March 14, 1995 and their first amended complaint ("FAC") on June 2, 1995 against defendants Overland, the Bank, and the Company. Their FAC made several federal and state law claims, including claims for fraud and/or misrepresentation pursuant to § 10(b) of the Securities Exchange Act of 1934 ("1934 Act") and § 12(2) of the Securities Act of 1933 ("1933 Act"). On October 16, 1995 this Court held a hearing pursuant to which the Court dismissed the FAC, granting the motion without prejudice with respect to some claims and dismissing some causes of action with prejudice.

Plaintiffs filed their second amended complaint ("SAC") on January 11, 1996. That SAC added factual allegations, substantive claims, and named a new defendant, Stephens, Inc., which was the sponsor and distributor of the Overland Express Variable Rate Government Fund (the "Fund") at issue in this case.

Pursuant to a hearing on April 1, 1996, this Court granted plaintiffs' motion for reconsideration and gave them leave to amend to add claims which were previously dismissed with prejudice. The Court also denied defendant Stephens' motion to dismiss the case against them. The Court ordered that the third amended complaint ("TAC"), filed as an Exhibit to plaintiffs' motion, would be filed as of April 1, 1996. The TAC is the currently effective complaint.

The Schaefers now seek to have the class certified with them as the named plaintiffs. They have also submitted a proposed form of class notice for which they seek Court approval. Defendant Stephens Inc. requests that the Court certify for interlocutory appeal an issue raised in the earlier Order.[1]

### B. Factual Background

This is a federal securities fraud case. Plaintiffs allege that they invested in a mutual fund, the Overland Variable Rate Government Fund ["Fund"], and that they have incurred losses as a result of material misrepresentations and omissions by defendants with respect to the risks and true nature of

---

1. In the earlier order denying Stephens' motion to dismiss, the Court also rejected Stephens' argument that any class action which proceeded against it should be subject to the new procedural rules of the Securities Litigation Reform Act of 1995 ("Reform Act"). Stephens wishes to appeal the Court's determination that the entire case, including the case against Stephens, would proceed under the pre-Reform Act rules.

the Fund's investments. It is undisputed that the Fund invested in, and was authorized to invest in, adjustable rate mortgage securities (ARMS) and collateralized mortgage obligations (CMOs). It is also undisputed that the Fund's net asset value (NAV) started to decline in March 1994, apparently as a result of fluctuations in market interest rates. Plaintiffs allege that the May 1994 Fund prospectus ("Prospectus") and other advertising materials produced and distributed by defendants (1) did not disclose that the Fund would sell CMOs and incur "permanent" losses, and (2) misrepresented the interest rate risks associated with these types of financial instruments.

## II. DISCUSSION

### A. Motion Certify the Class

#### 1. Standard of Law

Fed.R.Civ.Proc. 23 governs class actions. Rule 23(a) provides four criteria which must be met in order for a class to be certified:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Courts are expected to be rigorous in assessing whether or not the four pre-requisites have been met. *Hanon v. Dataproducts*, 976 F.2d 497, 509 (9th Cir.1992). If these four pre-requisites exist, Rule 23(b) then requires plaintiffs to show a grounds for proceeding as a class action in lieu of allowing separately maintained actions. Rule 23(b) provides for certification if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

Class actions are commonly used in securities fraud cases. *Arthur Young and Co. v. United States District Court*, 549 F.2d 686 (9th Cir.1977), *cert. denied*, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977). In determining whether an action is appropriate for class certification, the court should not reach the merits of the action. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 179, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974). A court should accept the substantive allegations of the complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17. (9th Cir.1975). The court can, however, consider evidence relevant to the Rule 23 determination even if that evidence is also related to the merits of the case. *Hanon v. Dataproducts Corporation*, 976 F.2d 497, 509 (9th Cir.1992); *see also, Castano v. The American Tobacco Company*, 84 F.3d 734 (5th Cir.1996) (noting that, "the strength of a plaintiff's claim should not affect the certification decision," but that, "a district court certainly may look past the pleadings to determine whether the requirements of Rule 23 have been met").

#### 2. Prerequisites for Maintaining a Class Action

Plaintiffs request certification of the following class:

All purchasers of shares in the Overland Express Funds, Inc. Variable Rate Government Fund ("the FUND") from and including March 15, 1992 to March 14, 1995, and who suffered damages as a result, excluding defendants and members of their immediate families, affiliates, successors and assigns of defendants and officers, trustee and directors of the Corporate defendants.

The Court must determine whether this class, represented by the Schaefers as named plaintiffs, meets the requirements of Rule 23.

#### (a) Impracticability of Joinder/Numerosity

■ To be impractical, joinder must be "difficult or manifestly inconvenient," but does not need to be shown to be impossible. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir.1964). Here, there were over 195 million shares outstanding at one point in the class period, hundreds

of thousands of shares traded, and over 2,500 shareholder accounts. The Court finds this to be a sufficiently numerous class to warrant certification.

### (b) Commonality

■ The second requirement for maintaining a class action is that there exist common questions of law or fact. "[A] common nucleus of operative facts is usually enough to satisfy the commonality requirement." *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir.1992). In addition, relief must "turn on questions of law applicable in the same manner to each member of the class." *General Tel. Co. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982). In *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975); *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1975):

> The overwhelming weight of authority holds that repeated misrepresentations ... satisfy the 'common question' requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

Defendants argue that the class will not have common issues with regard to the elements of reliance and causation on the allegedly false prospectus and advertising issues.[2] The securities laws allow plaintiffs to rely not only on direct reliance, but also on alternate legal theories, such as those found in *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (announcing the "fraud

on the market theory") and *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (holding that in cases alleging omissions, reliance is not necessary). Further discovery or legal developments in this case will narrow what theory or theories plaintiffs ultimately pursue in reaching the merits of their claim, however, to do so at this stage would be an inappropriate investigation of the merits of the case. Thus, courts have found that in light of the "fraud-on-the-market" theory of liability, individual reliance could vary without destroying the commonality. *See, e.g., In re Pilgrim Securities Litigation*, Civil Case No. 94–8491–KN (C.D.Cal., January 23, 1996); *In re Seagate Technology II Sec. Litig.*, 843 F.Supp. 1341, 1356–57 (N.D.Cal. 1994).[3]

By attempting to "split hairs" here, defendants argue that there are not common questions of law and fact. Adopting the *Blackie* court's "common sense" approach, however, this Court finds that all the potential class members here have the same basic legal claims (securities fraud) based on the same nucleus of operative facts (the investment in and NAV decline of the Overland Fund). Thus, the commonality requirement is met.

### (c) Typicality

■ The typicality element requires the Court to look at the interests of the named plaintiffs and assure that they are in line with those of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d at 508. The named plaintiffs' claims should arise out of the same course or conduct that gives rise to the class claims and be based on the same legal theories that would be generally relied upon by the class; the court should look at whether the class members have similar injuries, whether the allegedly wrongful activity is not unique to named plaintiffs, and whether oth-

---

2. Plaintiffs concede that "reliance" must be proven under a section 10(b) claim, but argue that some of plaintiffs claims—such as section 11 or 12(2)—do not have a reliance element. *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 297 (N.D.Cal.1978); *In re Software Toolworks Inc*, 50 F.3d 615, 621 (9th Cir.1994). Defendants contest this, arguing that all of plaintiffs' claims require some showing of reliance. The Court finds that the resolution of this issue is not necessary at this time, as the Court would certify the

class even if it were shown that reliance was required for all elements.

3. The presence of state law claims also does not destroy commonality in the presence of reliance requirements, because similar issues will apply under both federal and pendant state law. *Pilgrim, supra* at 16; *In re Pizza Time Theatre Sec. Lit.*, 112 F.R.D. 15, 19 (N.D.Cal.1986).

er class members have been injured by the same conduct. *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985). In *Weinberger v. Jackson*, 102 F.R.D. 839 (N.D.Cal.1984), the court found that:

> Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. Accordingly, differences in the amount of damages, the size or manner of purchase, the nature of the purchase, and even the specific document influencing the purchase will not render a claim atypical in most securities cases.

*Id.* at 844; *see also, In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130, 139 (D.N.J. 1984) (finding that plaintiffs' reliance on a variety of sources of information, including reliance on brokers, does not render the class plaintiffs' claims atypical); *In re American Continental/Lincoln S & L Sec. Lit.*, 140 F.R.D. 425, 430 (D.Ariz.1992) (holding that representations made to brokers or salesmen which are intended to be communicated to investors is sufficient to warrant class standing, even where the actual representations to individuals varied). Class certification may not be appropriate, however, where the named plaintiffs are subject to unique defenses that might skew the focus of the litigation. *Hanon*, 976 F.2d at 508. If these unique defenses will cause the interests of the class to suffer, certification should be denied. *In re Quarterdeck Office Sys. Inc, Sec. Litig.*, [1993–94 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 98,092 at 98,744, 1993 WL 623310 (C.D.Cal.1993).[4] Defendants need not show that these unique defenses will necessarily succeed, but rather that they will shape the focus of litigation in a way that may harm class members and ultimately risk the class' chance of recovery. *Irvin E. Schermer Trust v. Sun Equities Corp.*, 116 F.R.D. 332, 336 (D.Minn.1987).

■ Defendants here claim that the Schaefers are not "typical" class representatives. This contention is based primarily on defendants' contention that a vast majority of the shares at issue here were purchased by institutional investors, rather than smaller investors like the Schaefers.[5] Defendants argue that institutional investors can more easily show direct reliance than smaller investors. Moreover, institutional investors are generally considered more sophisticated investors and thus are sometimes held to a different standard of reliance; these institutional investors would likely be much more aware of the risks of the challenged investment products here, and thus would be subject to the defense of "actual knowledge." In contrast, defendants argue, Schaefer cannot show either direct reliance on the prospectus prior to his initial purchase or reliance on the "advertising materials." Schaefer's reliance was instead on the oral representations of his broker and on later prospectuses and annual reports sent to him during the period he maintained the investment and reinvested in the Fund.

Defendants argue that because the Schaefers cannot rely on direct reliance, they will focus on the claims regarding the inherent riskiness of CMOs, where they do not have to rely on direct reliance because of the fraud-on-the-market theory, and will de-emphasize the "duration" claim where they would have to show direct reliance on the "advertising" materials. Defendants argue that institutional investors would rather reverse this emphasis, because they cannot argue as credibly that they did not understand the risks of CMOs (which would provide defendants with an "actual knowledge" defense) and would prefer instead to focus on the "duration" claims because they can show direct reliance and that the "duration" numbers are allegedly false.

---

4. In both *Hanon* and *Quarterdeck*, the court denied certification primarily because the named plaintiff was a "professional" plaintiff who routinely purchased stock in order to have standing to bring suit. *See also, Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1462 (S.D.Cal.1988). The Schaefers do not appear to be "professional" plaintiffs.

5. According to defendants, 99% of the shares made during 1992 were "no-load" purchases which, by definition are purchases of $1,000,000 or more. (Def.'s Opp. at 7.)

Some courts have been reluctant to certify class actions in securities fraud cases that rely on oral, rather than written, representations because of the necessity of analyzing individual situations. *See, e.g., Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880, 882 (5th Cir.1973). On the other hand, courts have been willing to certify class actions where the oral misrepresentations were made as part of a "standardized sales pitch" which, while perhaps not presented identically to every class member, would have presented in a fairly similar form. *In re American Continental/Lincoln,* 140 F.R.D. at 430.

The Court finds that the Schaefer's claims are sufficiently typical to render them appropriate named plaintiffs, and that they will not face "unique" defenses which would destroy class unity or shape the litigation in a way that would be detrimental to the other class members. Moreover, although defendants urge that one of the institutional investors would make a better class representative, the Court notes that these "sophisticated" institutional investors will have the ability to "opt-out" of this action if they believe the Schaefers are not representing their interests.[6] Thus, the Court finds that the typicality requirement has been met.

### (d) Adequacy

■ The final requirement imposed by Rule 23(a)(4) is that the class plaintiffs be adequate. "Adequacy" included that the representative party's attorney be qualified and that the named plaintiffs' interests not be antagonistic to the remainder of the class. *In re United Energy Corp.,* 122 F.R.D. 251, 257 (C.D.Cal.1988). One court has described several categories of ways class members might be antagonistic: (1) when the class representative is seeking a different form of relief than the rest of the class would seek, (2) when the representative has filed both a derivative and class action, or (3) when the representative has a substantial equity interest in the defendant corporation which would discourage seeking damages in the action.

*Gibb v. Delta Drilling Co.,* 104 F.R.D. 59, 80 (N.D.Tex.1984).

Although it seems that none of these specific factors are present here, defendants argue that the Schaefers' are inadequate because, as described above, the Schaefers which will shape the litigation in a way potentially antagonistic to the interests of the class. The Court, however, finds that plaintiffs are adequate representatives of the class and that their counsel is sufficiently qualified to handle the litigation.

### 3. Grounds for Maintaining a Class Action

■ Plaintiffs here are arguing that in accordance with Rule 23, that common questions predominate the litigation and that a class action is the superior method of pursuing plaintiffs' claims. Pursuant to Rule 23(b)(3), the court should consider several factors in determining whether a class action is superior: (1) whether the potential class members would have significant interests in controlling the litigation, such as where there is an emotional stake in the outcome; (2) if there are other suits pending filed by other potential class members in an individual capacity; (3) if it is the most convenient and efficient way to handle the lawsuit; and (4) the "manageability" of the action as a class action (i.e. the cost of providing notice, the number of individual issues which are likely to arise). *See also,* William W. Schwarzer, et. al, *Federal Civil Procedure Before Trial* § 10;348, *et. seq.* (The Rutter Group 1996) (discussing the requirements under Rule 23(b)(3)).

Courts have generally found that actions for securities fraud actions are usually best maintained as class actions. *Epstein v. MCA, Inc.,* 50 F.3d 644, 668 (9th Cir.1995) (finding that actions for securities fraud alleging misstatements or omissions fit the requirements of Rule 23 "like a glove"); *In re Seagate Technology II Sec. Litig.,* 843 F.Supp. 1341, 1350 (N.D.Cal.1994) (finding

---

**6.** Defendants point to *In re California Micro Devices Sec. Litig.,* 168 F.R.D. 257 (N.D.Cal.1996) where the court substituted an institutional investor for an individual investor as the class plaintiff. In that case, however, the court was reviewing a proposed settlement and determined that the institutional investors had ownership interests in the defendant corporation which made the settlement potentially detrimental to them. Thus, the case is factually distinguishable.

that doubts should be resolved in favor of class action certification); *United Energy Corp. Sec. Lit.*, 122 F.R.D. 251, 253 (C.D.Cal. 1988) (same).

■ As noted above in the discussion of "commonality," the presence of different methods of reliance by different members of the class does not result in a conclusion that individual issues predominate over the common questions. Moreover, the class here is united by a multitude of common factual and legal issues. Thus, given the courts' preference for resolving large scale allegations of securities fraud by means of class action, it appears that plaintiffs have shown an adequate ground for certification here.

### 4. The Class Period

Plaintiff has also requested that the court modify the class period. This issue is within the discretion of the court. *Battle v. Pennsylvania*, 629 F.2d 269, 271 n. 1 (3d Cir.1980), *cert. denied,* 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1991). The FAC originally defined the class as all purchasers from January 1, 1991 to March 10, 1995. Pursuant to the Supreme Court holding in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), a class action can only be maintained for violations within three years prior to filing suit. The SAC defined the class as all purchasers and holders during the period from June 30, 1993 to December 31, 1994, the time period during which the fund suffered losses. It is conceded by plaintiffs that "holders" of securities may not be proper plaintiffs. Thus, plaintiffs request that the class be redefined to include all *purchasers* from the period March 15, 1992 to March 14, 1995. Defendants do not appear to take issue with this modification, and the Court thus orders that the class period be from March 15, 1992 to March 14, 1995.

### B. Motion for Approval of Class Notice

Plaintiffs are also seeking approval of their proposed form of class notice. In approved class actions, notice should be sent as promptly as possible after certification. Manual for Complex Litigation, p. 224 (Federal Judicial Center, 1995). Generally, the notice must provide, "sufficient information about the case ... to enable class members to make an informed decision about their participation." *Id.; see also, Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1177 (9th Cir.1977). Elements of a standard notice include: (1) a brief description of the substance of the action and the positions of the parties; (2) identification of the parties, class representative, and counsel; (3) a description of the relief sought; (4) a statement of any special risks to class members, such as being bound by the determination; and (5) a clear description of procedures and deadlines for opting out. Manual for Complex Litigation, p. 224. In addition, rule 23(c)(2) provides that:

> The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (c) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

The notice should be "neutral and objective in tone, and should neither promote nor discourage the assertion of claims." *Lamb v. United Security Life Co.,* 59 F.R.D. 25, 42 (S.D.Iowa 1972); *see also, Advance Drywall Co. v. United States Gypsum Co.,* 565 F.2d 1123, 1124–1125 (9th Cir.1977) (noting that the class notice should present a "fair recital" of the issues).

The Court finds that the proposed notice is not sufficiently complete nor neutral to provide proper notice. The Court thus orders the parties to confer and attempt to stipulate to a form of notice, which can then be approved by the Court.

### III. DEFENDANT'S REQUEST FOR INTERLOCUTORY APPEAL

Defendant Stephens has requested that the Court certify for interlocutory appeal the issue of whether or the Reform Act should apply to the portion of the action relating to Stephens. An interlocutory appeal can be granted by the district court pursuant to 28 U.S.C. § 1292(b) if: (1) the order involves a

controlling issue of law; (2) there are substantial grounds for a difference of opinion; and (3) and immediate appeal from the order may materially advance the ultimate termination of the litigation. The Court finds that these criteria are not present here and thus DENIES Stephens' request for the Court to certify the issue for interlocutory appeal.

## IV. CONCLUSION

For the foregoing reasons, the Court herein GRANTS plaintiffs' motion to certify the class, DENIES plaintiffs' motion for approval of the form of the class notice, and DENIES defendant Stephens' request to be certified for interlocutory appeal. The Court herein vacates the order of June 11, 1996. This order shall be effective NUNC PRO TUNC June 11, 1996.

IT IS SO ORDERED.