**In re COOPER COMPANIES INC. SECURITIES LITIGATION.**

**No. SACV 06–00169 CJC (RNBx).**

United States District Court, C.D. California, Southern Division.

Jan. 5, 2009.

Timothy J. Burke, Stull Stull and Brody, Michiyo M. Furukawa, Milberg LLP, Los Angeles, CA, for Plaintiffs.

David M. Brodsky, Latham and Watkins, New York, NY, Gregory Andrew Call, Jordan Eth, Judson E. Lobdell, Morrison and Foerster, San Francisco, CA, Michelle J. Correll, Charles W. Cox, II, Michele D. Johnson, Latham & Watkins, Geoffrey A. Graber, Morrison & Foerster, Bruce G. Vanyo, Katten Muchin, Los Angeles, CA, Paul H. Dawes, Latham & Watkins LLP, Menlo Park, CA, Stacey M. Sprenkel, Morrison and Foerster, Walnut Creek, CA, for Defendants.

X. Jay Alvarez, Ryan A. Llorens, Coughlin Stoia Geller Rudman and Robbins LLP, San Diego, CA, Eben O. McNair, IV, Schwarzwald and McNair, Cleveland, OH, for Movants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

CORMAC J. CARNEY, District Judge.

**INTRODUCTION**

Plaintiffs UNITE HERE National Retirement Fund ("UNITE"), Wayne County Employees' Retirement System ("Wayne"), and United Food and Commercial Workers Union Local 880—Retail Food Employers Joint Pension Fund (UFCW), individually and on behalf of all others similarly situated (collectively "Plaintiffs"), brought this action

against Cooper Companies Inc. ("Cooper") and several of its officers and directors ("Individual Defendants") (collectively "Defendants"), alleging violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934. Plaintiffs seek to have the Court certify this securities litigation as a class action on behalf of those persons who purchased or otherwise acquired Cooper common stock between July 28, 2004, and November 21, 2005 (the "Class Period").

After carefully considering the evidence presented by the parties and the arguments of their counsel, the Court finds that class certification is warranted here. This case fulfills Federal Rule of Civil Procedure 23(a)'s requirements: (1) the class' numerosity is readily apparent given there are thousands of possible members; (2) the major questions in this case—did Cooper misrepresent the condition of the company, and did Defendants know that their statements about the condition of the company were false and misleading—are common to the class members; (3) the class representatives, funds that manage their assets to provide for their workers' retirements, suffered the same, or greater, losses as the other members of the class and received the same information that other shareholders received; and (4) since the interests of the class representatives are aligned with the rest of the class, and since the class representatives likely have the means and incentives to effectively prosecute this suit, there is little doubt that the class representatives will fairly and adequately represent the interests of the proposed class.

This case also fulfills Federal Rule of Civil Procedure 23(b)(3)'s requirements. The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages. And adjudicating this matter as a class action is a superior method to resolve the parties' controversy because it avoids not only the dangers of duplicate discovery and trials, but also the unfairness of inconsistent findings and judgments. As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 "like a glove." *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir.1995).

Accordingly, Plaintiffs' motion for class certification is GRANTED.

## BACKGROUND

Plaintiffs allege that Cooper made a series of false and misleading statements about its business during the Class Period, artificially inflating the price of Cooper stock. (Amended Consolidated Compl. ("ACC") ¶ 3.) Due to this alleged manipulation, those who purchased stock during the Class Period or received it as a result of Cooper's merger with rival company Ocular Sciences Inc. ("Ocular") allegedly lost hundreds of millions of dollars. (*Id.*) During the Class Period, the value of Cooper stock rose to a high of $83.90 per share then plummeted to a low of $50.99 per share. (*Id.*) However, top Cooper executives sold $30 million of their stock holdings in connection with the merger and alleged stock manipulation. (*Id.*)

Plaintiffs' case is based upon a series of statements made during the Class Period, beginning with Cooper's announcement of its merger with Ocular on July 28, 2004. The merger resulted in Cooper becoming the third-largest supplier of soft contact lenses in the world. (ACC ¶ 3.) The statements concerned Cooper's general revenue outlook, its inventory levels, its products' status in the market for contact lenses, and its progress integrating its operations with former Ocular employees after the merger. Specifically, Plaintiffs allege that Defendants: (1) misstated the success of a new line of contact lenses even though they knew that inventory of the line was piling up in trade channels (ACC ¶¶ 64–87); (2) initially misrepresented the competitive effect of a new kind of competing contact lens, downplaying its negative effect on Cooper sales while lower-level employees informed managers about the truth, but then eventually admitted "there is no doubt that the ... products have had a major impact on our business in the United States" (ACC ¶¶ 88–109); (3) misstated the progress of the integration of Ocular's sales force, saying it was "fully integrated" when the two sales forces were plagued by infighting (ACC ¶¶ 109–117); (4) made false revenue projections (ACC ¶¶ 139–147); and (5) used these misrepresentations, omissions, and other failings to enrich themselves as corporate insid-

ers at shareholders' expense by selling stock on the precipice of plunging (ACC ¶¶ 180–192).

On the day of the announcement of its merger with Ocular, Cooper's stock price was $55.98 a share. (ACC ¶ 25.) From the day of the merger's announcement to March, 2005, the stock ran up to a high of $83.90; in the six weeks after that high point, insiders sold 342,000 shares of stock for $25.4 million. (*Id.*) A period of decrease in the share price followed, bottoming out with a decrease in guidance in May 2005. (*Id.*) Then, a second run-up occurred, with the firm raising guidance again, and shares reaching similar heights, with insiders again selling shares in September 2005. (*Id.*) Finally, on November 21, 2005, with the stock at a price of $73.67 per share, Cooper decreased its guidance for the next two years, causing the stock to drop of $23 per share, losing nearly 30 percent of its value in one day. (*Id.*) The company again decreased its guidance a month later. (*Id.*) Throughout the Class Period, Cooper officers repeatedly assured shareholders and the public that the integration of Ocular was proceeding as planned and would lead Cooper to increased profitability.

Insiders at the company sold their shares largely at the peaks of Cooper's stock performance. (*Id.*) The Individual Defendants in this case and other nonparty insiders made more than $101 million off their stock sales. (*Id.*) Defendant A. Thomas Bender, who served as Cooper's Chairman and Chief Executive Officer ("CEO"), sold 256,000 shares of stock over the Class Period and made $19.2 million. (ACC ¶ 34.) His sales were not part of any pre-established stock trading plan and were disproportional to his activity in other comparable periods. (*Id.*) Defendant Robert S. Weiss—Cooper's Executive Vice President and Chief Operating Officer—sold 84,000 shares of Cooper stock during the Class Period and made $5.96 million. (ACC ¶ 38.) None of his sales were effected as a part of a pre-established trading plan. (*Id.*) Defendant Gregory A. Fryling—Chief Operating Officer and President of the Cooper subsidiary CooperVision—sold 72,071 Cooper shares and made $5.4 million. (ACC ¶ 42.) His sales were not part of a pre-established trading plan. (*Id.*) The insiders' average sales price per share was $71, near the peak of Cooper share value during the Class Period. (ACC ¶ 25.) That average price was $16 a share higher than the price at the beginning of the proposed Class Period, and $21 a share higher than the price at the proposed Class Period's conclusion. (*Id.*)

## ANALYSIS

Federal Rule of Civil Procedure 23 sets forth two sets to maintain a class action. First, the proposed class must satisfy the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED.R.CIV.P. 23(a). Second, the party seeking certification must show that the action falls within one of the three subsections of Rule 23(b). In this case, Plaintiffs seek certification pursuant to 23(b)(3), which allows certification where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED.R.CIV.P. 23(b)(3). On a motion for class certification, the proponent bears the burden of demonstrating that each prerequisite for class designation is met. *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D.Cal.2004) (citing *In re Northern District of California Dalkon Shield IUD Products Liability Litig.*, 693 F.2d 847, 854 (9th Cir.1982)). In determining whether certification is proper, a district court must take the substantive allegations of the complaint as true, and may also consider extrinsic evidence submitted by the parties. *Id.* (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975)).

### A. Requirements Under Rule 23(a)

### 1. Numerosity

A proposed class meets Rule 23(a)'s numerosity requirement where the class is so numerous that joinder of all members indi-

vidually is "impracticable." FED.R.CIV.P. 23(a)(1). No exact numerical cut-off is required; rather, the specific facts of each case must be considered. *General Tel. Co. of Northwest, Inc. v. E.E. O. C.,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). However, numerosity is presumed where the plaintiff class contains forty or more members. *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995). In *In re Unioil Securities Litigation,* a district court found that a securities fraud case in which "several million" shares of stock were purchased during the class period had a class that was sufficiently numerous. *Unioil,* 107 F.R.D. 615, 618 (C.D.Cal.1985). Additionally, it is not necessary to state the exact number of class members when the plaintiff's allegations "plainly suffice" to meet the numerosity requirement. *Schwartz v. Harp.,* 108 F.R.D. 279, 281–82 (C.D.Cal.1985). Here, Plaintiffs' allegations meet the standard for numerosity. During the Class Period, Cooper had more than 36 million shares of stock outstanding. The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year. It is likely that thousands of people made such purchases. Joinder of more than a thousand plaintiffs would be impracticable. Defendants, furthermore, do not dispute that the proposed class is numerous. Therefore, the Court finds that the class is sufficiently numerous.

### 2. Commonality

■ Rule 23(a)(2) requires that class members' claims contain "questions of law and fact common to the class." FED. R. CIV. P. 23(a)(2). In general, a few factual variations among the class grievances will not defeat commonality so long as class members' claims arise from "shared legal issues" or "a common core of salient facts." *Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th Cir. 2003). However, the common issues of fact or law must be of sufficient importance to convince a court that a class action is the most efficient way of determining the rights of the parties. *Stott v. Haworth,* 916 F.2d 134, 145 (4th Cir.1990) ("Class certification is only proper when a determinative critical issue overshadows all other issues."); *Haley v. Medtronic,* 169 F.R.D. 643 (C.D.Cal.1996) (commonality may not exist in suits for injunctive relief where "the injunction sought turns on individual circumstances"); *Martin v. Dahlberg, Inc.,* 156 F.R.D. 207, 214 (N.D.Cal.1994) ("the core purposes of a class suit will only be advanced if the common issues of law or fact are issues central to the case.").

In *Blackie,* the Ninth Circuit held that public disclosures alleged to contain misrepresentations and overstatements of earnings and assets, and misleading accountings of expenses,[1] presented common questions of law and fact:

> [t]he overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie,* 524 F.2d at 902. Taking its approach from Blackie, one district court found that a proposed securities class satisfied the commonality requirements when all the potential class members had "the same basic legal claims (securities fraud) based on the same nucleus of operative facts." *Schaefer v.*

1. The *Blackie* plaintiffs' complaint alleged that the price of the company's stock was artificially inflated because: "the annual reports of [Defendant Corporation] for fiscal years 1970 and 1971, various interim reports, press releases and other documents (a) overstated earnings, (b) overstated the value of inventories and other assets, (c) buried expense items and other costs incurred for research and development in inventory, (d) misrepresented the companies' current ratio, (e) failed to establish adequate reserves for receivables, (f) failed to write off certain assets, (g) failed to account for the proposed discontinuation of certain product lines, and (h) misrepresented [Defendant Corporation's] prospects for future earnings." *Blackie,* 524 F.2d at 902.

*Overland Express Family of Funds,* 169 F.R.D. 124, 128 (S.D.Cal.1996). Another district court similarly found commonality where plaintiff shareholders accused the defendant corporation of: (1) misstating earnings; (2) engaging in a pattern of misleading press releases and public notices; and (3) suppressing damaging information. *Unioil,* 107 F.R.D. at 619–20.

■ Plaintiffs here make similar allegations against Cooper to show common issues of law and fact. Plaintiffs detail a series of material omissions and misrepresentations from the sources investors typically rely upon to receive the information that is vital to their financial decision making. These include public pronouncements and earnings forecasts. Plaintiffs' allegations raise the following common questions of law and fact: "(1) whether Defendants violated the Securities and Exchange Act; (2) whether Defendants falsely represented material facts; (3) whether the Individual Defendants caused Cooper to issue false and misleading statements during the Class Period; (4) whether Defendants knew that their statements were false and misleading; and (5) whether the price of Cooper's publicly traded securities was artificially inflated." (Pl.'s Brf. at 14.) These common questions form the core of a case for securities fraud; they are also extremely similar to questions of law and fact that other courts have found to be common in previous securities fraud cases. If they chose to press this action as individuals, all class members would still have to prove these questions. Accordingly, the Court finds that there is sufficient commonality of questions of law and fact to certify the class.

### 3. Typicality

■ Subsection (3) of Rule 23(a) requires that "the claims and defenses of the representative parties are typical of the claims and defenses of the class." FED.R.CIV.P. 23(a)(3). The Ninth Circuit does not require the named plaintiffs' injuries to be "identical with those of the other class members, [but] only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Armstrong v.*

*Davis,* 275 F.3d 849, 869 (9th Cir.2001). The district court in *Schaefer* found that two individual investors in a mutual fund were sufficiently typical of the whole of investors to serve as class representatives, even when the majority of the investors in the fund were institutional investors. *Schaefer,* 169 F.R.D. at 129. However, in *Hanon v. Dataproducts Corp.,* the Ninth Circuit found that a plaintiff could not satisfy the typicality requirement because the proposed plaintiff was a "professional" plaintiff who frequently made stock purchases to gain standing to file securities fraud suits. *Hanon,* 976 F.2d 497, 508 (9th Cir.1992). The *Hanon* plaintiff only purchased ten shares of the stock at issue in that case; the purchase was apparently motivated by a desire to sue, making him vulnerable to a defense that he did not rely on the market. *Id.* "Because of Hanon's unique situation, it is predictable that a major focus of the litigation will be on a defense unique to him." *Id.* at 509. Unlike the situation in *Hanon,* the *Schaefer* court found it significant that the Schaefers were not "professional" plaintiffs; they did not purchase shares in the fund simply to have standing to file an action. *Id.* Instead,

> [t]he named plaintiffs' claims should arise out of the same course or conduct that gives rise to the class claims and be based on the same legal theories that would be generally relied upon by the class; the court should look at whether the class members have similar injuries, whether the wrongful activity is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.

*Schaefer,* 169 F.R.D. at 129–30 (citing *Schwartz,* 108 F.R.D. at 282).

■ In this case, Plaintiffs' claims and the nature of their alleged losses are sufficiently similar to other class members' claims and alleged losses to be considered typical. Plaintiffs all purchased Cooper shares during the Class Period, allegedly suffering significant losses as a result of Defendants' alleged wrongdoing. UFCW purchased 20,100 Cooper shares and sold 1,700 shares during the Class Period. (Decl. of Thomas H. Robertson, Sept. 15, 2008, ¶ 2.) Wayne purchased

69,208 shares of Cooper stock and sold 5,600 shares during the Class Period. (Decl. of Richard Noelke, Sept. 15, 2008, ¶ 2.) UNITE purchased 22,280 shares of Cooper stock during the Class Period and apparently did not sell any of its shares. (Decl. of Richard N. Rust ("Rust Decl."), Sept. 15, 2008, ¶ 2.) All three proposed class representatives have also declared that they actively selected class counsel, whom they retained prior to the litigation pursuant to monitoring agreements. These facts indicate that the class representatives are not the professional plaintiffs so feared by the *Hanon* court. The class representatives here are pension funds, not penny-ante investors who merely purchased token shares to buy a ticket in the litigation lotto. These retirement funds bought Cooper stock and sold it for investment purposes, subject to the same information and representations as the market at large. The Court finds that the class representatives are typical of the rest of the class.

### 4. Adequacy

■ The class representatives must fairly and adequately protect the interests of the class. FED.R.CIV.P. 23(a)(4). The adequacy requirement depends on: (1) whether the class representatives and their counsel have any conflicts of interest with other class members; and (2) whether the class representatives and their counsel will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir.2003). Reviewing a securities class action, the district court in *Schaefer* formulated the issue of adequacy as determining whether the "representative party's attorney [would] be qualified" and whether "the named plaintiffs' interests [would] not be antagonistic to the remainder of the class." *Schaefer*, 169 F.R.D. at 130. Analyzing the adequacy requirement, the district court in *Unioil* stated that:

> [t]here is considerable overlap between the typicality prerequisite of Rule 23(a)(3) and the adequate representation requirement of Rule 23(a)(4). Although a court may consider potential conflicts of interest, the Ninth Circuit has observed that courts generally decline to consider conflicts at

the outset, unless the conflict is apparent and at the very heart of the suit.

*Unioil*, 107 F.R.D. at 622 (citations omitted).

■ It is undisputable that class counsel in this case has extensive experience prosecuting suits of this nature. Class counsel specializes in securities fraud actions and achieved success as lead counsel in one of the largest and highest-profile securities cases of the last decade, the *Enron* case. (Decl. of Ryan Llorens, Sept. 15, 2008, Ex. A.) Moreover, there is no evidence, or allegation, of collusion between the class representatives and Defendants. The Court, therefore, does not find that there are conflicts so significant to render the proposed class representatives unable to vigorously prosecute the suit.

Nor does the Court have any concern about the adequacy of the class representatives in this case. The class representatives allegedly lost at least $1.4 million because of Defendants' alleged wrongdoing. The class representatives are familiar with the facts and theories of this case. Each of the class representatives has declared to the Court that they have supervised and monitored the progress of the litigation, including reviewing quarterly updates from the class counsel and supervising subordinates who collected discovery materials. The class representatives have also given depositions in this case demonstrating their knowledge of the issues involved in the case. For example, UNITE HERE's representative stated in his deposition that he knew the roles each defendant played in the fraud. (Decl. of X. Jay Alvarez, Dec. 1, 2008, Ex. C, Rust Dep. 66–67.) Given the extensive holdings of the class representatives, and the importance of the funds under their management, the class representatives are extremely likely to pursue this suit with vigor. The Court finds that the proposed representatives and their counsel satisfy the adequacy requirement.

Defendants argue that the class representatives are inadequate because they have insufficient involvement in the litigation, effectively abdicating control of the suit to class counsel. (Def.'s Op. Brf. at 22–24.) Defendants argue that the class representatives have been lax in their supervision of class counsel. For instance, the fund manager of

UNITE does not regularly review litigation reports, the Wayne representative was unsure if he reviewed the complaint in this matter, and the representative from UFCW had not spoken with class counsel until immediately before his deposition.[2] However, this evidence, by itself, is insufficient to show that the class representatives would be inadequate. The mere fact that the limited number of individuals deposed by Defendants have not closely monitored this litigation does not mean that every person in each retirement fund has been similarly uninvolved. For example, the representative from UFCW also testified that the fund's general counsel keeps track of the litigation on behalf of the fund. More importantly, the class representatives have submitted declarations and deposition testimony establishing that they are very familiar with the facts and theories of this case. They have shown that they have done more than an adequate job of supervising and monitoring class counsel. (*See, e.g.,* Rust Decl. ¶¶ 6, 7; Alvarez Decl. Ex C, Rust Dep. at 65–66; Alvarez Decl. Ex. B, Dep. of Thomas H. Robinson at 50, 51.) Contrary to Defendants' assertions, the class representatives have not completely abdicated their roles in the litigation to class counsel.

The class representatives in this case do not have the troubling traits that suggest this is lawyer-driven litigation by a manufactured plaintiff out to make a quick buck. These representatives are unlike the plaintiff in *Weisman v. Darneille,* one of the cases relied upon by Defendants in their inadequacy argument. The plaintiff in that case was a felon convicted of securities fraud himself, who covered up that fact in the early stages of the case. *Weisman v. Darneille,* 78 F.R.D. 669, 671 (S.D.N.Y.1978). That fact, combined with his ignorance of the case, led the district court to find him inadequate:

"Plaintiff's conviction and subsequent conduct here convince us that he lacks the 'honesty, conscientiousness, and other affirmative personal qualities' required of a class representative." *Id.* (quoting *Ash v. Brunswick Corp.,* 405 F.Supp. 234 (D.Del.1975)). Here, there are no intimations of dishonesty on the part of the class representatives. To the contrary, the evidence before the Court shows that the class representatives are genuine shareholders who sincerely believe that they have been defrauded by Defendants.

## B. Requirements Under Rule 23(b)

Rule 23(b)(3) permits certification where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" in light of, among other things, "the difficulties likely to be encountered in the management of a class action." FED.R.CIV.P. 23(b)(3).

### 1. Predominance

■ Predominance is a similar inquiry to commonality, but requires a heightened showing that facts and issues common to the class predominate over any individual issues that might be present. FED.R.CIV.P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

■ This action seeks redress for alleged violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, and Rule 10b–5, promulgated by the Securities

---

**2.** Defendants also argue that the representatives of Wayne and UFCW who were deposed were uninvolved in, or did not recall, the decisions to buy and sell Cooper shares, rendering them inadequate for reasons that are unclear. It is possible that this fact could subject the class representatives to a defense that, because they were uninvolved in those decisions, they could not have relied upon the alleged misrepresentations at the core of this suit. As an initial matter, this

argument seems more appropriately marshaled against a finding of typicality, not adequacy. In any event, the Plaintiffs are relying on a fraud-upon-the-market theory for this case, making them less vulnerable to a defense of nonreliance. Finally, the Ninth Circuit has held that nonreliance is not fatal to class certification: "[w]e emphasize that the defense of non-reliance is not a basis for denial of class certification." *Hanon,* 976 F.2d at 509 (citations omitted).

and Exchange Commission ("SEC"). Section 10(b) makes it unlawful:

> to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe.

15 U.S.C. § 78j(b). Rule 10b–5, adopted by the SEC in 1942, similarly provides:

> it shall be unlawful for any person, directly or indirectly:
>
> (a) to employ any device, scheme, or artifice to defraud,
>
> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 CFR § 240.10b–5. Section 20(a) provides: every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly in-

duce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). To establish a securities fraud under these laws, a party must show: (1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) transaction and loss causation; and (5) economic loss (damages). *In re Daou Systems Inc.,* 411 F.3d 1006, 1014 (9th Cir.2005) (*citing Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)). Notably, the United States Supreme Court in *Dura* explained that reliance (transaction causation) and loss causation were separate elements. *Dura,* 544 U.S. at 341–42, 125 S.Ct. 1627. Loss causation is "a causal connection between the material misrepresentation and the loss." *Id.* at 342, 125 S.Ct. 1627. Reliance, which courts use interchangeably with "transaction causation" in securities cases, requires plaintiffs to show that they relied on the misrepresentation at issue when deciding to purchase the security in question. *Id.* at 341–42, 125 S.Ct. 1627. While related, loss causation and transaction causation (reliance) are two distinct elements.[3] Loss causation is the bridge between reliance and actual damages, akin to proximate causation in a tort action. *Id.* at 342, 344, 125 S.Ct. 1627.

 The United States Supreme Court has held that when securities fraud class-action plaintiffs meet certain requirements,[4] they are entitled to a fraud-on-the-

---

**3.** The United States Supreme Court in *Dura* cited to HAZEN, LAW OF SECURITIES REGULATION, to explain the difference between these two concepts:

> [t]o begin with, the plaintiff must prove "transaction causation," which means that, but for the wrongful conduct, the transaction would not have gone through, at least in the form that it eventually took. The concept of transaction causation has been properly characterized as "nothing more than 'but for' causation," and more questionably as "merely another way of describing reliance." Although reliance and causation constitute distinct elements of a Rule 10b–5 claim, transaction causation may be established by facts that establish reliance. Transaction causation does not represent the strictest form of "but for" causation because it requires only that the terms of the transaction have been significantly affected by the material misstatement or omission. . . .

> Secondly, the plaintiff must be able to prove "loss causation": namely that the plaintiff's injury (generally the diminution in the value of his or her investment) is directly attributable both to the wrongful conduct and the form and manner in which the challenged transaction occurred. Loss causation provides the necessary connection between the challenged conduct and the plaintiff's pecuniary loss. Loss causation does not require that the material misstatement or omission be the exclusive cause of the loss; it is sufficient to show that it was a significant contributing factor to the loss.
>
> 3 LAW SEC. REG. § 12.11 (5th ed.) (citations omitted).

**4.** The requirements are: "(1) that the defendant made public misrepresentations; (2) that the misrepresentations were material; (3) that the

market presumption of reliance. This creates a rebuttable presumption that the plaintiffs in the class actually relied on the defendants' material misrepresentations or omissions when purchasing or selling a security. *Basic Inc. v. Levinson*, 485 U.S. 224, 248, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The presumption is founded on the theory that "in a modern and efficient securities market, the market price of a stock incorporates all available public information. Therefore, any person who trades shares relies on the integrity of the market price." *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. America West Holding Corp.* 320 F.3d 920, 947 (9th Cir.2003) (citations omitted). "[T]he fraud-on-the-market theory is premised on the fact that a misrepresentation has affected the stock's price incongruently to the stock's true value. Only then is detrimental reliance presumed because a plaintiff traded stock relying on the integrity of the market price." No. 84, 320 F.3d at 948 (citations and quotation omitted). The fraud-on-the-market presumption is rebuttable by "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff." *Basic*, 485 U.S. at 248, 108 S.Ct. 978. If the defendant can show that this link is severed as to any group of class plaintiffs, it would create in that group the necessity of showing actual reliance, and diminish the predominance of liability-related issues. The United States Supreme Court has also held, however, that it was inappropriate for a district court to delve into whether the statements at issue could have actually misinformed the market and changed the valuation of a security. *Basic*, 485 U.S. at 249 n. 29, 108 S.Ct. 978. "Proof of that sort is a matter for trial, throughout which the district court retains the authority to amend the certification order as may be appropriate." *Id.*

District courts in the Ninth Circuit have held that when plaintiffs plead a fraud-on-the-market theory, questions of whether misleading conduct occurred, and whether that conduct occurred with fraudulent intent, predominate over other questions. *See, e.g., Freedman v. Louisiana–Pacific Corp.*, 922 F.Supp. 377, 399 (D.Or.1996); *Unioil*, 107 F.R.D. at 619, 622; *Schaefer*, 169 F.R.D. at 128, 131. Here, Plaintiffs have properly pleaded the fraud-on-the-market theory. The complaint alleges that Defendants made public, material misrepresentations. Allegedly false overly optimistic financial forecasts and appraisals of product sales made in analyst calls are certainly public and material to valuation of a company, especially a company that is in the process of merging. Furthermore, these are the types of statements that reasonable investors rely upon when making an investment. Cooper stock was widely traded on a national exchange and covered by financial analysts, two indicators of an efficient market. Plaintiffs have also pleaded that the class representatives' shares were traded during the Class Period. Plaintiffs, therefore, are entitled to the fraud-upon-the-market presumption for purposes of class certification.

The Ninth Circuit in *Blackie* found that common questions of law and fact related to misrepresentations and omissions in securities fraud suits could predominate over individual discrepancies between class members regarding reliance, loss causation, and damages. *Blackie*, 524 F.2d at 905–06. "The presence of different methods of reliance by different members of the class does not result in a conclusion that individual issues predominate over the common questions," especially when the class is "united by a multitude of common factual and legal issues." *Schaefer*, 169 F.R.D. at 131. The *Schaefer* court concluded that common issues of "repeated misrepresentations" made to "a class of purchasers allegedly defrauded over a period of time," rightfully predominated over individual issues related to causation. *Id.* at 128. In *Unioil*, the district court found that when "a common nucleus of misrepresentations, material omissions and market manipulations [exists], the common

shares were traded on an efficient market; (4) that the misrepresentations would induce a reasonable, relying investor to misjudge the value of the shares; and (5) that the plaintiff traded the

shares between the time the misrepresentations were made and the time the truth was revealed." *Basic Inc. v. Levinson*, 485 U.S. 224, 248, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

questions predominate over any differences between individual class members with respect to damages, causation or reliance." *Unioil,* 107 F.R.D. at 622.

■ The same nucleus of alleged misrepresentations, material omissions, and market manipulations typical of the securities class actions—and common to this class—predominate over any individual issues that separate class members in this case. More specifically, Plaintiffs have alleged a series of material misstatements and omissions in several distinct areas over the course of the Class Period. They claim that Defendants made false statements about the success of a line of contact lenses and related inventory figures; the competitive effect of a new kind of lens that Cooper was not bringing to the market; the ease of transition of personnel after the Ocular merger, including the integration of the companies' sales forces; and Cooper's general financial health and outlook. Plaintiffs will have to prove the existence of these statements in these diverse areas, likely through a combination of documentary evidence and witness testimony. Plaintiffs will also have to prove that the statements made about these matters were false, that Individual Defendants caused the statements to be made, and that Defendants omitted releasing other relevant, material information. In this regard, Plaintiffs have already presented confidential witness statements in their pleadings that will likely be integral to all class members' claims. All class members' claims turn on findings over whether certain statements were made and whether they were false. If Plaintiffs cannot prove that the allegedly fraudulent statements were made, or that the statements were fraudulent, all class members' claims will fail regardless of the extent of their reliance or damages.

Similarly, all class members' claims will fail if they are unable to show that Defendants made their misrepresentations or omissions with scienter: the knowledge that they were false and the intent to commit fraud upon their shareholders. Proving scienter is a key to every class member's case. If, as alleged, Defendants engaged in an ongoing scheme to defraud shareholders that stretched over the entire Class Period, the evidence of scienter will be identical for all class members, no matter when they purchased or sold Cooper shares within the proposed Class Period. The same evidence applies equally to each class member; proving or disproving scienter does not hinge on any individual plaintiff's actions, but on Defendants' actions.[5]

In summary, the critical questions of what Defendants said, what they knew, what they may have withheld, and with what intent they acted, are central to all class members' claims. Without favorable findings on these critical questions related to liability, no member of the class can succeed. Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy. These issues only affect certain members of the class, not each and every member. The class members in this case have more issues keeping them together than driving them apart. The common issues predominate over the individual ones.

■ Defendants make several arguments that they contend rebut the fraud-on-the-market presumption and create individualized issues of reliance with regard to certain class members. *Basic,* 485 U.S. at 248–249, 108 S.Ct. 978. None of Defendants' arguments, however, defeat class certification. For example, Defendants argue that Ocular officers made disclosures and statements prior to the merger that nullified alleged misrepresentations made on a later date by Cooper officials in the merger announcement.[6] Contrary to Defendants' assertion, the Court is not obligated to discern the meaning and

5. The evidence that Defendants made false statements and omissions in connection with their purchase or sale of securities should also be identical among every member of the class.

6. These statements were made by Ocular officers prior to Ocular's merger with Cooper, making it less likely that the statements would have been reflected in Cooper's share price. Statements made by Ocular officers about Ocular matters do not carry the same weight as opposing alleged misstatements made by Cooper officers because there is an attenuated relationship between statements by Ocular officers and the market price of Cooper stock.

impact of specific, possibly corrective, statements at this stage of the case: "whether subsequent statements cure any prior omissions or misrepresentations is a question of fact which cannot be appropriately resolved on" a motion for class certification. *Unioil,* 107 F.R.D. at 621. *See also Basic,* 485 U.S. at 249 n. 29, 108 S.Ct. 978.[7]

■ Defendants also argue that certain kinds of investors—short sellers, in-and-out traders, and index holders—are not entitled to the fraud-on-the-market presumption because they cannot show loss causation. This argument is similarly misplaced at the class certification stage. Short sellers may be included in a class at the certification stage. *See In re Magma Design Automation Sec. Litig.,* No. C 05–2394 CRB, 2007 WL 2344992 (N.D.Cal.2007) ("This Court rejects the idea that the inclusion of short-sellers is fatal to Plaintiffs' request for class certification."). Indeed, the Court has not even been presented with evidence that these types of traders purchased Cooper stock during the Class period. If Defendants can show, as a matter of law, that certain proposed class members' losses were not caused by misstatements, then they should do so at summary judgment or trial. *See In re Micron Technologies Inc. Sec. Litig.,* 247 F.R.D. 627, 634 (D.Idaho) ("Loss causation, then, is an issue related to the merits rather than to the Rule 23 inquiry into whether common issues will predominate. Accordingly, the Court's rigorous analysis cannot extend to the loss causation issue at this stage of the proceedings.").

■ Finally, Defendants argue that the Ocular shareholders who acquired their Cooper shares in the two companies' merger should be precluded from membership in the class, or that the Court should deny class certification based upon these individuals' inclusion. (Def.'s Op. Brf. at 17.) According to Defendants, those individuals are allegedly barred from participation in this case by a settlement and court order in previous litigation relating to the merger. In the settlement, these shareholders allegedly released their claims against Cooper and its officers related to violation of federal securities laws. (Request for Judicial Notice, Ex. 6 ¶¶ 1. 13.) Defendants may be correct that the settlement has the possibility of preventing the former Ocular shareholders from succeeding in this action. However, the question of that settlement's impact is, again, not one to be determined on a motion for class certification, but on summary judgment or at trial. The only issue related to the settlement that concerns the Court at the class certification stage is whether the settlement sabotages the predominance of the common liability issues involved in this case. The Court concludes that the settlement does not have such an impact.

## 2. Superiority

■ Rule 23(b)(3) also requires that a class action be superior to other methods for fairly and efficiently adjudicating the controversy. District courts have consistently recognized that the common liability issues involved in securities fraud cases are ideally suited for resolution by way of a class action. In the *Unioil* securities litigation, the district court found that "given the substantial number of possible class members" and "the competence and experience of counsel on both sides," the plaintiffs' claims were best adjudicated in a class action. *Unioil,* 107 F.R.D. at 622. Similarly, in *Freedman,* a district court found superiority in another securities fraud

---

7. The Ninth Circuit has further held that district courts "must consider evidence which goes to the requirements of Rule 23 at the class certification stage even if the evidence may also relate to the underlying merits of the case." *Dukes v. Wal–Mart Inc.,* 509 F.3d 1168, 1178 n. 2 (9th Cir.2007) (citing *Hanon,* 976 F.2d at 509). At the same time, the inclusion of evidence that may speak to the merits of a case does not mean that a district court should mistake class action certification for summary judgment. *See Eisen,* 417 U.S. at 177, 94 S.Ct. 2140 ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). *See also Hanon* 976 F.2d at 509 ("a motion for class certification is not the appropriate point at which to resolve the merits of a plaintiff's claim") (citing *Eisen,* 417 U.S. at 177, 94 S.Ct. 2140). District courts have recognized the Ninth Circuit's directives come into play when undertaking the "rigorous" analysis of whether an action meets Federal Rule of Civil Procedure 23's requirements. *Unioil,* 107 F.R.D. at 618.

action because "courts have consistently embraced the class action device as a superior method of adjudicating federal securities fraud claims," and because the plaintiffs in that case sought "a determination on essentially the same issues, therefore, a class action would enhance judicial economy and efficiency." *Freedman*, 922 F.Supp. at 400.

The Ninth Circuit has also recognized that class actions are an effective way to pursue shareholders' actions for securities fraud, finding that class actions:

> have proved useful where a large number of purchasers or holders of securities claim to have been defrauded by a common course of dealing on the part of the defendants, and have been frequently utilized in such situations. Indeed, it has been suggested that the ultimate effectiveness of the federal remedies in this area may depend in large measure on the applicability of the class action device.

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir.1964) (citations omitted). "The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." *Blackie* 524 F.2d at 903 (citations omitted). "[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *Id. See also In re Seagate Technology II Sec. Litig.*, 843 F.Supp. 1341, 1350 (N.D.Cal.1994) ("The use of the class action device has long been the favored approach of courts faced with a Rule 10b–5 action in which numerous traders have allegedly been injured.").

The Court is convinced that in this case a class action is the superior method for fairly and efficiently adjudicating Plaintiffs' securities fraud claims. Undoubtedly, the parties will have to conduct extensive discovery and trial preparation to resolve their controversy. It makes no sense for the parties to conduct

that discovery and trial preparation more than once. Trying each plaintiff's case separately would be incredibly inefficient, burdensome, and costly. Judicial economy demands that the Court certify the class and resolve the parties' controversy in just one forum.

The interests of justice and the perception of equal treatment under the law are perhaps even more important than ensuring judicial economy. If every plaintiff has to bring his or her own action against Defendants, there is a substantial danger of inconsistent findings and judgments.[8] Such a result gives the public a troubling impression that the law is arbitrary—highly dependant on the competency of counsel, the personalities and quirks of judges, and the biases of local jurors. The Court is extremely reluctant to take any action that would foster such a negative impression of our judicial system.

Finally, the Court does not foresee any great difficulties in managing this securities fraud case as a class action. The securities laws are not overly technical or complex. The individual questions of law and fact are limited in number. They certainly do not predominate over the common questions of law and fact. Counsel for both the class and Defendants are highly experienced and skilled. The Court is confident that it can manage this class action in a fair and efficient manner.

## CONCLUSION

Plaintiffs have satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). Plaintiffs have also satisfied the predominance and superiority requirements of Rule 23(b)(3). Accordingly, the Court orders certification of the proposed class pursuant to Rule 23(b)(3).

---

**8.** Additionally, for those class members whose alleged losses are not significant enough to spur them to seek relief individually, a class action

provides an opportunity to find redress without footing the crippling costs of litigation.